IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DR. CHARLES HOPSON, Ph.D.                                         PLAINTIFF

v.                            No. 4:11-cv-608-DPM

MIKE BEEBE, in his individual and official capacity
as Governor of the State of Arkansas; DR. TOM
KIMBRELL, in his individual and official capacity
as Commissioner, Arkansas Department of Education;
PULASKI COUNTY SPECIAL SCHOOL DISTRICT;
Dr. JERRY GUESS, in his official capacity as
Superintendent of Pulaski County Special School
District; and JOHN OR JANE DOE, NUMBERS 1
THROUGH 100, in their individual and official
capacities                                                       DEFENDANTS

ORDER

An Arkansas statute passed in 2003 allows the Arkansas Department of

Education to assume control of a school district in fiscal distress.  In 2010, Dr.

Charles Hopson left a good job in Oregon to become Superintendent of the

troubled Pulaski County Special School District.  Shortly before Dr. Hopson

arrived in Arkansas, and before he signed a contract, an anonymous caller

warned him that the District would be placed in fiscal distress.  Under Ark.

Code Ann. § 6-20-1909, a fiscal-distress declaration would allow the State to run the schools.  This cloud prompted Dr. Hopson to call Dr. Tom Kimbrell, Commissioner of the Arkansas Department of Education.  Dr. Hopson says Dr. Kimbrell assured him the State had neither the ability nor intention to take over and run the District.  *Document No. 2,* ¶¶ 21 & 22.  Dr. Hopson and the District eventually agreed on a three-year contract, with a buyout provision that would be triggered by a termination without cause.  *Document No. 2, at 23–34.*

During the contract's first year, in May 2011, the State Board of Education declared the District in fiscal distress.  About a month later, after the State Board rejected the District's appeal of the declaration, Dr. Kimbrell dissolved the Pulaski County School Board and relieved Dr. Hopson of all administrative authority.  The District stopped paying Dr. Hopson on his contract and refused to pay any buyout.  All this was on Dr. Kimbrell's order.  Dr. Hopson has sued various entities and people for breach of contract or promissory estoppel, and for violations of the Contract Clause, the Due Process Clause, and the Takings Clause.  All defendants move to dismiss.

-2-

1. **Jurisdiction.** Dr. Hopson brings his federal claims under 28 U.S.C. §§ 1331 & 1332, and his state-law claims under 28 U.S.C. § 1367.  Governor Mike Beebe and Dr. Kimbrell challenge this Court's diversity jurisdiction. *Document No. 11, at 4.*  They contend that Arkansas is the real party to Dr. Hopson's official-capacity suits against them; and because Arkansas is not a "citizen" of a state, its presence defeats diversity jurisdiction.  The Court agrees. *Postal Telegraph Cable Co. v. State of Alabama*, 155 U.S. 482, 487 (1894). Complete diversity is absent.  That doesn't end the Court's task, though, because Dr. Hopson's federal claims create subject-matter jurisdiction.  28 U.S.C. § 1331.

2. **State Defendants.**  Governor Beebe and Dr. Kimbrell argue that Dr. Hopson's official-capacity claims against them are barred by sovereign immunity and that they enjoy qualified immunity against his individual-capacity claims.  They're right.

**Official-capacity damages claims.**  Dr. Hopson's official-capacity claims against Governor Beebe and Dr. Kimbrell are claims against the State. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  But the Eleventh Amendment usually closes the federal courts to plaintiffs who seek money damages from

unconsenting states. *Florida Department of Health & Rehabilitative Services v. Florida Nursing Home Ass'n.*, 450 U.S. 147, 149–50 (1981). Dr. Hopson concedes this law. *Document No. 19, at 12.* He argues instead that an Arkansas statute waives sovereign immunity when a suit involves a school district. And by stepping into the District's shoes, Dr. Hopson says, the ADE stepped into the District's amenability to suit.

That's just not so. First, Arkansas school districts generally don't enjoy Eleventh Amendment sovereign immunity. *Hadley v. North Arkansas Community Technical College*, 76 F.3d 1437, 1442 n.9 (8th Cir. 1996). Thus no waiver is needed. If one were needed, the cited statute would not suffice. Waiver must be stated by "the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Florida Department*, 450 U.S. at 150 (quotation omitted). A nearly identical statute, the Supreme Court held, did not waive Eleventh Amendment sovereign immunity. 450 U.S. at 149–50. The same reasoning applies here. Third, the ADE's control of the District would more likely confer immunity on the District than open the ADE to suit. *Compare Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984). Dr. Hopson

cannot recover backward-looking damages from the State, either directly or indirectly through Governor Beebe and Dr. Kimbrell.

**Individual-capacity damages claims.** The Governor and Dr. Kimbrell also assert qualified immunity. Qualified immunity protects against the rigors of a lawsuit—not just an eventual judgment—so it should be decided at the threshold. *Shannon v. Koehler*, 616 F.3d 855, 864 n.5 (8th Cir. 2010). Does Dr. Hopson's complaint allege conduct by Governor Beebe or Dr. Kimbrell that violated the Constitution? Would a reasonable official in their places have known his conduct crossed the line? *Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011). The Court can take either question first. *Pearson v. Callahan*, 555 U.S. 223 (2009).

About four months before Dr. Kimbrell terminated Dr. Hopson's duties, the Arkansas Court of Appeals decided *Smith v. Decatur School District*, 2011 Ark. App. 126. Smith, a school superintendent, was suspended with pay while the ADE decided whether to declare his employer a fiscally distressed school district. The district stopped paying him when the ADE appointed an interim replacement. 2011 Ark. App. 126, at 3. When Smith sued the district for breach of contract, the district raised impossibility as a defense. The

defense met success; the ADE's actions were sanctioned by statute. "We believe that it is implicit in the statutory scheme that ADE does have the authority to terminate superintendents' contracts." 2011 Ark. App. 126, at 6.

Smith's suit and Dr. Hopson's are not identical. Smith sued a school district for breach; Dr. Hopson brings federal claims against the State as well. But Dr. Hopson's federal claims center on a property right that (whatever its contours) was created by state law. A state official can generally rely on a facially valid statute. *Coates v. Powell*, 639 F.3d 471, 477 (8th Cir. 2011). *Smith's* fresh affirmation of the ADE's authority on similar facts bolsters Dr. Kimbrell and Governor Beebe's argument that they did not violate a clearly established constitutional right. And the Court frankly sees few clear lines in this intersection between the procedural-due-process, takings, and contract-clause doctrines. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007). Because any constitutional infringement did not violate a clearly established right, Governor Beebe and Dr. Kimbrell are entitled to qualified immunity against the federal claims for damages.

The Governor and Dr. Kimbrell enjoy a similar immunity under Arkansas law against the state claims for damages. A creature of statute, this state qualified immunity rises or falls on a nearly identical "clearly established right" analysis. *Fegans v. Norris*, 351 Ark. 200, 207–08, 89 S.W.3d 919, 924–25 (2002). The only additional question under state law is whether the challenged action was done maliciously. ARK. CODE ANN. § 19-10-305(a). There is no allegation or proof that either Governor Beebe or Dr. Kimbrell acted with malice. And this state qualified immunity extends beyond constitutional claims to any alleged violation of Arkansas law.

The result of all these immunity rulings is this: Dr. Hopson may not recover damages from any State defendant on any claim, federal or state.

**3. Surplus Parties.** Dr. Kimbrell hired Dr. Jerry Guess to run PCSSD. Dr. Hopson candidly acknowledges that Dr. Guess played no role in the decisions and actions behind this lawsuit. The Pulaski County Special School District is a defendant. Rather than leaving Dr. Guess in because some claim might develop against him, which Dr. Hopson suggests, the Court dismisses Dr. Guess now for failure to state a claim. Governor Beebe is in the case because of his alleged conversations with Dr. Kimbrell about the Department

taking over the District. But Dr. Hopson can't recover damages against the Governor in either his official or individual capacity. And Dr. Kimbrell is an adequate stand-in for the State on all federal claims. Governor Beebe is therefore dismissed as a defendant.

**4. Federal Claims.** Dr. Hopson alleges violations of three provisions of the U.S. Constitution: the Contract Clause, the Due Process Clause of the Fourteenth Amendment, and the Takings Clause. Through the vehicle of 42 U.S.C. § 1983, he seeks damages (which are unavailable for the reasons given), a declaratory judgment that the part of Arkansas's fiscal-distress statutes allowing removal of a superintendent is unconstitutional as applied to him, and an injunction barring the provision's enforcement against him. The requests for declaratory and injunctive relief must rest on some constitutional violation. The Declaratory Judgment Act does not expand federal jurisdiction or create substantive rights; the Act is a procedural device. *Bacon v. Neer*, 631 F.3d 875, 880 (8th Cir. 2011). With the possibility of any damages against the State eliminated, the question is whether Dr. Hopson has a viable constitutional claim to support a declaration or an injunction.

**a. Contract Clause?** "No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility." U.S. CONSTITUTION, art. I, § 10. The hole in Dr. Hopson's Contract Clause claim is timing. The State's fiscal-distress statutes are part of the Arkansas Fiscal Distress Assessment and Accountability Program, one of the *Lake View* reforms. Act 1467 of 2003, codified at Ark. Code Ann. § 6-20-1901 *et seq.* This statutory regime went into effect almost a decade ago. Dr. Hopson made his contract with the PCSSD in 2010. The fiscal-distress statutes "enter[ed] into and form[ed] part of . . ." the Hopson/PCSSD contract. *Petty v. Missouri & Arkansas Railway Co.*, 205 Ark. 990, 996, 167 S.W.2d 895, 898 (1943) (quotation omitted). The District and Dr. Hopson are "conclusively presumed to contract with reference to the existing law." *Ibid.*

The Contract Clause looks backward to pre-existing contractual relationships, and asks whether new law impairs those relationships. *Lehigh Water Co. v. Corp. of Borough of Easton*, 121 U.S. 388, 391 (1887); *Equipment Manufacturers Institute v. Janklow*, 300 F.3d 842, 850–51 (8th Cir. 2002). Dr. Hopson's situation is the reverse—law first, contract second. His Contract Clause claim therefore fails as a matter of law. It is dismissed with prejudice.

**b. Takings?** Dr. Hopson's takings claim is premature. It is long-settled law that one must exhaust state remedies for any alleged taking before seeking relief in federal court. *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985); *Willis Smith and Co., Inc v. Arkansas*, 548 F.3d 638, 640 (8th Cir. 2008).  Arkansas has an administrative forum and procedure for making claims against the State.  ARK. CODE ANN. § 19-10-201 *et seq*.  Dr. Hopson has not pleaded or demonstrated exhaustion of state remedies.  At the recent oral argument on the motions, his lawyer discussed some challenges presented by proceeding before the Arkansas Claims Commission and seemed to indicate that Dr. Hopson had not filed a claim there yet.  Whatever the width and depth of Dr. Hopson's property right in his job, his takings claim is unripe, and therefore dismissed without prejudice.

**c. Procedural Due Process?** Dr. Hopson claims a denial of procedural due process in Dr. Kimbrell's elimination of the former superintendent's property rights in his contract with the District.  *See generally*, *Winegar v. Des Moines Independent Community School District*, 20 F.3d 895, 899 (8th Cir. 1994); *Otto v. City of Victoria*, 685 F.3d 755, 760 (8th Cir. 2012).  This claim attacks the

procedure used, not the substance of what Dr. Kimbrell did.   *Compare Singleton v. Cecil*, 176 F.3d 419, 424, 428–29, 431 (8th Cir. 1999) (*en banc*).   The threshold issue is whether Dr. Hopson had, as a matter of Arkansas law, what the cases call a property interest in the contract.   *Winegar*, 20 F.3d at 899; *Thompson v. Adams*, 268 F.3d 609, 611 (8th Cir. 2001).   If so, then this claim will boil down to whether Dr. Hopson got the process he was due.   If not, then he has no constitutional claim for denial of procedural due process.

Dr. Hopson had no property right or interest in continued employment as the superintendent after PCSSD was determined to be in fiscal distress.   His contract incorporated the Arkansas law authorizing Dr. Kimbrell to show him the door: "In addressing school districts in fiscal distress, the Department of Education may . . . [r]equire the superintendent to relinquish all administrative authority with respect to the school district[.]" ARK. CODE ANN. § 6-20-1909(a)(1).   Dr. Hopson's property interest in his job was thus qualified. In these circumstances, he had no constitutionally protected interest in continued employment under Arkansas law. *Petty*, 205 Ark. at 996, 167 S.W.2d at 898. When Dr. Kimbrell ordered Dr. Hopson to relinquish all administrative authority over the District one year into a three-year contract, the Due Process

Clause was neither implicated nor offended.  Whatever the terms of the existing contract between a superintendent and a school district, the fiscal-distress statutes authorize the Department to remove the superintendent of a financially imperilled district.

The Court agrees with Dr. Kimbrell, in the alternative, that Dr. Hopson got due process before the removal.  Even if Dr. Hopson had a property interest in continued employment as superintendent, the Department complied with the Constitution in depriving him of it.  Dr. Kimbrell's June 2011 termination letter, which the Court can consider because Dr. Hopson attached it to his complaint, outlines the relevant history.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).  Where the Department identifies a District as fiscally distressed, the Department must notify the school board's president and the superintendent in writing by certified mail.  ARK. CODE ANN. § 6-20-1905(a)(1)(A)(i).  The statute prescribes the indicators of fiscal distress with particularity.  ARK. CODE ANN. § 6-20-1904.  The District may appeal the designation to the State Board of Education.  ARK. CODE ANN. § 6-20-1905(b).  As Dr. Kimbrell's letter indicates, the State Board made the final decision as to the Pulaski County Special School District before Dr.

-12-

Hopson had to relinquish all his administrative authority. While removal of the serving superintendent is not automatic, ARK. CODE ANN. § 6-20-1909(a)(1) & (4), the State Board's final action on PCSSD—after notice and a hearing—satisfies the Due Process Clause's flexible mandate as to Dr. Hopson's possible removal. *Clark v. Kansas City Missouri School District*, 375 F.3d 698, 702 (8th Cir. 2004).

Dr. Hopson's contract, though, also presents a deeper question about his property interest in his employment relationship with the District. The contract covers terminations with good cause and without cause. *Document No. 2, at 30–33*. The good-cause provisions list a variety of qualifying acts and omissions and incorporate the process required by the Arkansas Teacher Fair Dismissal Act, which does not otherwise cloak superintendents. *Document No. 2, at 30–32*; ARK. CODE ANN. § 6-17-1502(a)(2). The without-cause provision says this: "The Board may terminate this Agreement at any time without cause. In the event this Agreement is terminated without cause [Dr. Hopson] shall be paid the lesser of 18 months of salary and benefits as provided by this Agreement or the number of months[] of salary and benefits remaining to be paid[.]" *Document No. 2, at 33*. The deeper question is whether this provision

created a property interest that, notwithstanding the statutory possibility of removal, required due process before the buyout was eliminated.

It did. The buyout was not about Dr. Hopson's continued employment. It was the agreed result if his employment ended without cause. It is not enough to say, as Dr. Kimbrell does, that Dr. Hopson became an employee at will after the Department classified the District as fiscally distressed. The statutory background allowed Dr. Hopson's removal and replacement. And the Court has no difficulty, based on *Smith* and an independent reading of Ark. Code Ann. § 6-20-1909, in concluding that it makes no sense for the Department or the District to have to keep paying a removed superintendent's salary when someone else is doing that job. But the statute is loudly silent about a removed superintendent's contractual rights beyond continued employment.

The Court is not persuaded by Dr. Kimbrell's argument from other provisions of the statute, such as Ark. Code Ann. § 6-20-1908, that the Department could eliminate the buyout without any process. The Due Process Clause, after all, is part of the background law that provides some boundaries for the Department's actions. ARK. CODE ANN. §§ 6-20-1908(f) &

1909(a)(6). The Arkansas common law of contract gave Dr. Hopson the right to a certain outcome, the buyout, if he was terminated without cause. He was entitled to procedural due process in connection with the Department's decision that no buyout would be paid. This is not a matter of whether the buyout could be eliminated; it could. This is a matter—a constitutional matter—of how this property interest could be eliminated. This claim is against the Department, not the District, because Dr. Kimbrell was running the District in place of the dissolved school board. He's the one who decided not to pay any buyout.

The proceedings about the District's fiscal-distress designation give the process due a superintendent on the issue of continued employment. That process—at least as far as the Court can tell at this point—did not address Dr. Hopson's buyout right under the contract. Dr. Hopson was entitled to notice and a hearing at a meaningful time and place before that property interest, a rather unique entitlement, was eliminated. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542–43 (1985); *Winegar*, 20 F.3d at 899. Contrary to the Department's argument, post-deprivation process at the Claims Commission or in Pulaski County Circuit Court is not constitutionally adequate as a matter

of law. The general rule requires pre-deprivation process; and none of the exceptions which allow post-deprivation process seem to apply in the circumstances presented. *Keating v. Nebraska Public Power District*, 562 F.3d 923, 928–930 (8th Cir. 2009); *Christiansen v. West Branch Community School District*, 674 F.3d 927, 935–36 (8th Cir. 2012).

The Court is not holding that the Director could not eliminate the buyout. Hopson conceded at the motion hearing that Dr. Kimbrell could. The Court holds only that a superintendent with a contract such as this one, which anticipated and authorized early termination without cause only on a certain payment, is entitled to more process than Dr. Hopson got, so far as the pleadings reveal. Perhaps that occurred. If not, the State Defendants' immunity defenses eliminate any possible damage award. Dr. Hopson is not entitled to reinstatement by way of injunction either—the Department's statutory removal authority is unequivocal. But Dr. Hopson might be entitled to a declaratory judgment that the Department violated the Due Process Clause. This will depend on the developed facts.

**5.   State Claims.** Dr. Hopson alleges a breach of contract and, alternatively, a promissory estoppel.  He seeks only compensatory damages on both counts.

Both claims fail as a matter of law against the State Defendants.  First, sovereign immunity flowing from the Eleventh Amendment and qualified immunity under both federal and state law bar any damage claim, whatever the legal theory, for the reasons explained.  Second, sovereign immunity under the Arkansas Constitution stops any contract claim against the State, its agencies, and officers.  *Arkansas Tech. University v. Link*, 341 Ark. 495, 501–03, 17 S.W.3d 809, 813–14 (2000).  The Court sees no basis for either a waiver by the State, or any applicable exception, to this powerful legal defense.  The Court doubts whether Dr. Hopson's promissory-estoppel claim against the State Defendants, a matter of quasi-contract, can survive *Arkansas Tech*'s broad holding.  If it does, the Eleventh Amendment and qualified immunity doom this claim against the State Defendants in any event.

As against the Pulaski County Special School District, the breach-of-contract claim fails on the governing law.  The District could not perform.  This is made clear by the District's letter (through counsel) responding to Dr.

-17-

Hopson's request for performance of the contract, through the buyout or otherwise. *Document No. 2, at 21–22.* Dr. Hopson appended the letter to his complaint, bringing the document within the pleading for the Court's consideration. *Porous Media*, 186 F.3d at 1079. The District could not pay because "the directions of the [Arkansas Department of Education] make such payment impossible." *Document No. 2, at 21.* Judge Gruber's well-reasoned opinion for the Arkansas Court of Appeals in *Smith* is directly in point. And this Court predicts that the Arkansas Supreme Court would follow *Smith's* holding in the circumstances presented. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010). The District's performance was excused as a matter of law on the pleaded facts about what happened. *Smith*, 2011 Ark. App. 126, at 4–7.

The promissory-estoppel claim, however, survives against the Pulaski County Special School District for now. It is plausible, though of uncertain strength. No Eleventh Amendment problem or sovereign immunity exists because the District is not the State or a State agency. This claim is not asserted against any individual, so no qualified immunity applies. Dr. Hopson says he left a good job in Oregon, took the wheel of the PCSSD, and

started trying to steer the District through its many difficulties. He and the District made a three-year contract, with a promised buyout if Dr. Hopson was relieved without good cause. He was relieved; there was no good-cause finding; no buyout was paid. The facts and circumstances alleged by Dr. Hopson — taken as true at this point, which they must be — plead a plausible claim of detrimental reliance. *DePriest v. AstraZeneca Pharmaceuticals, L.P.*, 2009 Ark. 547, at 21–22, 351 S.W.3d 168, 179–80 (2009); *see generally*, RESTATEMENT (SECOND) OF CONTRACTS § 90.

The contract was discharged, as a matter of law, because it was impossible for the District to perform. This discharge in law opens the possibility of a remedy off the contract, as a matter of equity, considering all the material circumstances. *Friends of Children, Inc. v. Marcus*, 46 Ark. App. 57, 61, 876 S.W.2d 603, 605–06 (1994); *United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603, 606–09 (8th Cir. 1999) (Arkansas law). The Court must consider this venerable quasi-contract law because the statute authorizes the Department to "[t]ake any other action allowed by law" necessary to right a fiscally distressed district, not take any action it thinks best whatever the law may be. ARK. CODE ANN. § 6-20-1909(a)(6). While

-19-

discovery may bear out Defendants' assertions that Dr. Hopson was part of the problem rather than part of the solution, at this point the Court must assume the opposite, as Dr. Hopson alleges. Whether the District was unjustly enriched by not having to pay the buyout, if one was indeed owed depending on the facts, is uncertain, and must be clarified as the case progresses. RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 34 (2011); 2 GEORGE E. PALMER, LAW OF RESTITUTION ch. 7 (1978 & Supp. 2011).

* * *

Here, then, is where the case stands. All federal and state claims against all State Defendants are dismissed except the procedural-due-process claim on the buyout against Dr. Kimbrell in his official capacity only. Any recovery on that claim will be limited to a declaratory judgment. Damages are unavailable. An injunction to restore Dr. Hopson to his job is unavailable too. Whether attorney's fees are available on the procedural-due-process claim, if Dr. Hopson prevails after discovery, is an open question. The takings claim is dismissed without prejudice; all other claims against the State Defendants are dismissed with prejudice. The breach-of-contract claim as against the

Pulaski County Special School District is dismissed with prejudice.  The promissory-estoppel claim against the District goes forward.  An Amended Final Scheduling Order will issue.  The discovery stay is lifted.  Motions to dismiss, *Document Nos. 10 & 23*, mostly granted and denied in two respects only.

So Ordered.

*D.P. Marshall Jr.*
D.P. Marshall Jr.
United States District Judge

*12 September 2012*