IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

PATRICIA HOPSON, AS
executrix of the estate of Dr. CHARLES HOPSON, Ph.D.         PLAINTIFF
deceased

V.                        NO. 4:11 CV 00608 DPM

Dr. JERRY GUESS et al                                        DEFENDANTS

TRIAL BRIEF

I.  INTRODUCTION

This trial brief is submitted by Patricia Hopson, administratrix of the estate of Dr. Charles Hopson, deceased.

All filings previously made herein by Plaintiff is incorporated by reference as is a motion in limine filed of even dated herewith.

II.   BACKGROUND

Dr. Charles Hopson was recruited by the Pulaski County Special School District (PCSSD), to serve as the Superintendant of the District.  During the discussions it was known that the PCSSD was in fiscal distress and might be taken over by the state.  Dr. Hopson was given assurances by both the Commissioner of the Department of Education, Thomas Kimbrell,  and the search committee

appointed by the PCSSD itself that the "PCSSD" was too big for the state to take over the district and further assurances from the Board Members of the "PCSSD" itself that it would not be taken over.

In an abundance of caution, Dr. Hopson negotiated a contract with the PCSSD that included a buyout provision stating that if he was terminated without cause, he was to be paid the remainder of his contract or 18 months salary, which ever was less. Dr. Hopson prudently negotiated a contract for three years that paid him $242,431.00 per year. Contract was to run from July 1, 2010 to June 30th, 2013. Additionally, in the event that Plaintiff was terminated, such termination was to be for "good cause" only as defined by the Arkansas Teacher Fair Dismissal Act. The parties further agreed to be bound by the Arkansas Teacher Fari Dismissal Act, Ark. Code Ann Section 6-17-1501 et seq along with its full procedural protections and due process, as a matter of contract between the parties.

After being on the job for 10 months, on June 20, 2011 without warning, Plaintiff was confronted by agents of the Arkansas Department of Education, sent by Dr. Tom Kimbrell, its Commissioner. Dr. Hopson was told he was terminated, effective immediately and he needed to clear out his desk and vacate immediately. Dr. Kimbrell later spoke to the press and declared Dr. Hopson's contract was "null and void." Dr. Hopson was terminated without cause. The PCSSD refused to

honor Dr. Hopson's buyout provision.

The Arkansas General Assembly passed an act known as the Arkansas Fiscal Assessment and Accountability Program, giving the Arkansas Department of Education the power to take over managerial control of Districts that were in "fiscal distress." The law is codified at Ark. Code Ann. section 6-20-1909.

Nothing in the law says the state or any District so controlled is given power to nullify contracts, however the state used it in that way against Dr. Charles Hopson.  Dr. Hopson filed suit alleging the unconstitutional interference with the obligation of contracts, prohibited by both the state constitution and the Constitution of the United States.  Dr. Hopson's lawsuit also raised the issue of the taking of Property without due process of law, breach of contract, Promissory Estoppel and Detrimental Reliance, and violation of the Arkansas Teacher Fair Dismissal Act.  The issues against the State and the Department of Education are now pending before the State Claims Commission for Damages.

The state was dismissed from the case on grounds of sovereign immunity. This is a decision with which Plaintiff respectfully disagrees but is, in any case, "law of the case" in this action.

"PCSSD"argues that the "act" gives them the authority to nullify contracts,

even though the act is silent on the matter, they rely on the Arkansas Supreme Court case of *Smith V. Decatur School District*., 2011 Ark App 126 (February 16, 2011). The PCSSD argues that the "*Smith*" case gives them the right to nullify the contract because a single panel of the Ark. Court of Appeals stated "to arrive at a different result would be absurd." While Plaintiff would agree that to have two competing superintendants exercising power makes little sense, there is simply no good reason for the PCSSD to nullify a contract, which is definite as to time and remuneration and reasons for discharge, and with a specific "buyout provision." When one appeals a case one gets an answer to the questions raised. The *Smith* case,( which Plaintiff still believes, rightly or wrongly is incorrectly decided) is not on point here and did not raise the questions Dr. Hopson is raising. The *Smith* case is different for three main reasons.

    First of all, Plaintiff Smith was asking for his job back and arguing that 6-20-1909 does not permit the state to terminating a superintendent's contract. Secondly Smith's termination was for cause, and thirdly Smith's contract did not contemplate the State taking over the District and therefore had no "buyout" provision.

    The "PCSSD" has and will argue that 6-20-1909 was in effect when Dr. Hopson negotiated his contract and therefore the law was part of his contract.

4

Hopson argues that Dr. Charles Hopson was recruited by the Pulaski County Special School District (PCSSD), to serve as the Superintendant of the District. During the discussions it was known that the PCSSD was in fiscal distress and might be taken over by the state. Dr. Hopson was given assurances by the Commissioner of the Department of Education that the "PCSSD" was too big for the state to take over the district and further assurances from the Board Members of the "PCSSD" that it would not be taken over. In an abundance of caution, Dr. Hopson negotiated a contract with the PCSSD that included a buyout provision stating that if he was terminated without cause, he was to be paid the remainder of his contract or 18 months salary, which ever was less. Dr. Hopson prudently negotiated a contract for three years that paid him $242,431.00 per year. Contract was to run from July 1, 2010 to June 30th, 2013. Additionally, in the event that Plaintiff was terminated, such termination was to be for "good cause" only as defined by the Arkansas Teacher Fair Dismissal Act. The parties further agreed to be bound by the Arkansas Teacher Fari Dismissal Act, Ark. Code Ann Section 6-17-1501 et seq along with its full procedural protections and due process, as a matter of contract between the parties.

### III. ARGUMENT

On September 12, 2012, this Court dismissed the State on grounds of

sovereign immunity but retained jurisdiction over the PCSSD on theories of promissory estoppel/detrimental reliance and taking of property without due process of law. The Court stated:

> "      Dr. Hopson's contract . . .presents a deeper question about his property interest in his employment relationship with the District. The contract covers terminations with good cause and without cause. *Document No. 2, at 30-33.* The good-cause provisions list a variety of qualifying acts and omissions and incorporate the process required by the Arkansas Teacher Fair Dismissal Act, which does not otherwise cloak superintendents. *Document No. 2, at 30-32;* ARK. CODE ANN. § 6-174502(a)(2). The without-cause provision says this: "The Board may terminate this Agreement at any time without cause. In the event this Agreement is terminated without cause [Dr. Hopson] shall be paid the lesser of 18 months of salary and benefits as provided by this Agreement or the number of months[] of salary and benefits remaining to be paid[.]" *Document No. 2, at 33.* The deeper question is whether this provision created a property interest that, notwithstanding the statutory possibility of removal, required due process before the buyout was eliminated.
>       It did. The buyout was not about Dr. Hopson's continued employment. It was the agreed result if his employment ended without cause. It is not enough to say, as Dr. Kimbrell does, that Dr. Hopson became an employee at will after the Department classified the District as fiscally distressed. "

*Hopson v. Beebe et al,* ( ED AR 2013), at 13-14

And again:

> " The promissory-estoppel claim, however, survives against the Pulaski County Special School District for now. It is plausible, though of uncertain strength. No Eleventh Amendment problem or sovereign immunity exists because the District is not the State or a State agency. This claim is not asserted against any individual, so no

qualified immunity applies. Dr. Hopson says he left a good job in Oregon, took the wheel of the PCSSD, and started trying to steer the District through its many difficulties. He and the District made a three-year contract, with a promised buyout if Dr. Hopson was relieved without good cause. He was relieved; there was no good-cause finding; no buyout was paid. The facts and circumstances alleged by Dr. Hopson—taken as true at this point, which they must be—plead a plausible claim of detrimental reliance. *DePriest v. AstraZeneca Pharmaceuticals, L.P.,* 2009 Ark. 547, at 21-22, 351 S.W.3d 168, 179-80 (2009); *see generally,* RESTATEMENT (SECOND) OF CONTRACTS § 90.

The contract was discharged, as a matter of law, because it was impossible for the District to perform. This discharge in law opens the possibility of a remedy off the contract, as a matter of equity, considering all the material circumstances. *Friends of Children, Inc. v. Marcus,* 46 Ark. App. 57, 61, 876 S.W.2d 603, 605-06 (1994); *United States v. Applied Pharmacy Consultants, Inc.,* 182 F.3d 603, 606-09 (8th Cir. 1999) (Arkansas law). The Court must consider this venerable quasi-contract law because the statute authorizes the Department to "[t]ake any other action allowed by law" necessary to right a fiscally distressed district, not take any action it thinks best whatever the law may be. Ark. Code Ann. § 6-20-1909(a)(6)."

*Id* at 18-19

This is a succinct statement of the issues herein and the controlling authorities, both as law of the case and otherwise.

First of all, a contract provision is a species of property. As the Court noted, Hopson did not receive due process before his property interest in the buy out provision was taken from him; perforce his widow and his estate were thus

deprived of property rightly belonging to him after his death as part of his heritable estate.

Second, detrimental reliance/promissory estoppel will allow for the enforcement of contract provisions even when the contract proper fails.  The persons doing the hiring for PCSSD, the Board president and vice president, each note that they represented to Plaintiff that the District would indemnify him should the unexpected occur and the State or any other entity terminate him without cause.  His reliance on this was reasonable and justice requires that the provision be enforced.  See *Taylor v. Eagle Ridge Developers,* 21 Ark App 309, 29 SW2d 767 (Ark 2000).  In no reported Arkansas case is there any language that the misrepresentation be fraudulent; only that it be reasonably relied upon and made for the purpose of inducing reliance.  Thus it matters not at all whether the search committee of the PCSSD misrepresented purposely or simply repeated a lie heard from Kimbrell which *they themselves* believed to be true.   The reliance was reasonable and detrimental.

## CONCLUSION

For these reasons, Patricia Hopson, as administratrix of the Estate of Charles Hopson on behalf of that estate, the widow and her children, should be

granted judgment, with costs and attorney fees as provided by Arkansas statute to prevailing attorneys on such contract cases.

Respectfully submitted,
/s/ Rickey H. Hicks (by dob)
_____
Rickey H. Hicks, #89235
415 Main Place
Little Rock, AR. 72201
(501) 374-2574
Fax: (501) 372-3164
E-mail: hickslawoffice @yahoo.com


and


/s/ David O. Bowden
_____
David O. Bowden, #89119
P.O. Box 193101
Little Rock, AR. 72219-3101
(501) 372-1315
Fax: (501) 372-1870
E-mail:  david_bowden@juno.com


**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of October, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

Allen P. Roberts, ALLEN P. ROBERTS, P.A., 325 Jefferson ST, S.W., P.O. Box 280, Camden, AR. 71711

Jay Bequette, BEQUETTE & BILLINGSLEY, P.A., 425 W. Capitol Ave, Suite 3200, Little Rock, AR. 72201-3469

/s/ David O. Bowden